IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SHAWN DEWAYNE MCGRAW,            )
#169 528,                        )
    Plaintiff,              )
                                 )
v.                               )   CIVIL ACTION NO. 2:11-CV-1087-WHA
                                 )                [WO]
JEFFERY TEMPLE, *et al*.,         )
                                 )
    Defendants.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate, challenges the constitutionality of actions taken against him during his incarceration at the Kilby Correctional Facility in Mt. Meigs, Alabama.[1] He contends that on September 13, 2011, his constitutional rights were violated when he was subjected both to an excessive use of force and a failure to be protected from the use of force. He further complains that he was deprived of due process during the disciplinary proceedings which arose from the September 13 incident and by a failure to have the incident properly investigated. Named as defendants are Correctional Officers Frankie Brown, Jeffrey Temple, and Michelle Ellington, Lieutenant Mark Loman, and Captain Victor Napier. Plaintiff seeks injunctive relief, damages, and court costs. He also requests that criminal charges be filed against Defendants Temple for assault and battery. *Doc. Nos. 1, 17*.

In accordance with the orders of the court, Defendants filed a special report and

---

[1] During the pendency of this action Plaintiff was transferred to another state correctional facility.

supporting evidentiary material in response to the allegations contained in the complaint and amended complaint. The court then informed Plaintiff that Defendants' special report, may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed a response to the special report filed by Defendants. This case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, Plaintiff's opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that the motion for summary judgment filed by Defendants Ellington, Loman, and Napier is due to be granted and the motion for summary judgment filed by Defendants Temple and Brown is due to denied.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving

___

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although

for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof.  *Id.* at 322-24.

Defendants have met their evidentiary burden.  Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263. Consequently, to survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible

---

Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment"). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment

is proper.  *Celotex*, 477 U.S. at 323-24 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.);  *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Plaintiff has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his  excessive force claim against Defendant Temple and his failure to protect claim against Defendant Brown.  The remaining defendants, however, are entitled to summary judgment on the claims lodged against them by Plaintiff.

## II.  DISCUSSION

### A.  Absolute Immunity

Plaintiff lodges his complaint against Defendants in their official capacities. Defendants, however are entitled to absolute immunity from monetary damages when sued in their official capacity.  Official capacity lawsuits are "in all respects other than name, . .

. treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

> A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44,[59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997). In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity regarding the alleged violations of Plaintiff' constitutional rights. *Id*.; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B. Injunctive Relief

Plaintiff requests preliminary and permanent injunctive relief against Defendants seeking to enjoin them from failing to provide him with adequate medical attention for injuries sustained during the incident made the subject matter of the complaint. *See Doc. No. 17* at 7. Plaintiff is no longer incarcerated at the Kilby Correctional Facility. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any

continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at the Kilby Correctional Facility,  his requests for equitable relief have been rendered moot.

*C. Criminal Charges*

Plaintiff requests that criminal charges be filed against Defendant Temple for assault and battery. Plaintiff, however, does not have a constitutional right to see his alleged persecutor punished for his conduct.  "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973);  *Leeke v. Timmerman*, 454 U.S. 83, 85-86 (1981); *see also Savage v. Arnold*, 403 F. Supp. 172, 174 (E.D. Pa. 1975) (private citizens have no right to institute criminal prosecutions in federal court); *Keenan v. McGrath*, 328 F.2d 610, 611 (D. Mass. 1964) (sanctioning a private individual's ability to initiate a criminal prosecution in his own name in a federal district court would provide a "means to circumvent the legal safeguards provided for persons accused of crime."). Whether to prosecute a particular case is in the discretion of the prosecutorial authority.  *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *Otero v. United States Attorney General*, 832 F.2d 141 (11th Cir. 1987). In light of the foregoing, Plaintiff's request to initiate criminal charges against Defendant Temple is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(i).

*D. Qualified Immunity*

Regarding Plaintiff's excessive force and failure to protect claims lodged against

Defendants Temple and Brown in their individual capacities, they argue they are entitled to qualified immunity.  However, "'there is no room for qualified immunity' in Eighth . . . Amendment excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful."  *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701 (11th Cir. June 30, 2010) (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)*.*  Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment.  *Id.* at 1302; *see also Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  Accordingly, this court will consider whether Plaintiff's allegations that Defendant Temple used excessive force against him from which Defendant Brown failed to protect him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

*E.  The Excessive Force Claim*

On the morning of September 13, 2011, Defendants Temple and Brown arrived at the segregation unit to escort  Plaintiff to a medical appointment. The officers placed Plaintiff

in full restraints for the escort. Once at the medical unit, a nurse took Plaintiff's vital signs and asked him questions about his health and the medications he was taking. Plaintiff became agitated during the interview when the nurse made an incorrect notation on his medical record. Because the nurse became verbally abusive in response to Plaintiff questioning her about the alleged incorrect medical entries, he asked Defendants Temple and Brown to return him to his cell. Defendant Temple directed Plaintiff to follow through with his appointment. When Plaintiff refused, the officer became angry. He grabbed Plaintiff's collar and threw him into a wall. Defendants Temple and Brown then escorted him back to his cell. *Doc. Nos. 1, 17*.

En route to the segregation unit, Plaintiff and Defendant Temple engaged in a verbal altercation regarding the incident at the medical unit which turned physical. Plaintiff alleges that midway to his cell, Defendant Temple rammed one hand into the back of his head, grabbed him around the throat with his other hand, and slammed him into a concrete wall. When Plaintiff fell to the ground Defendant Temple choked him with one hand while punching him in the head with his other hand. Plaintiff alleges Defendant Brown stood by watching the assault unfold without intervening and then held him down as Defendant Temple continued assaulting him. The two guards then picked Plaintiff up and escorted him to the front of the segregation unit where Defendant Temple again assaulted Plaintiff by grabbing his throat, slamming him into the North Control Cubicle, and choking him until the officer observed Defendant Napier approaching. *Doc. Nos. 1, 17*.

10

Defendants' evidence includes an incident report prepared shortly after the matter about which Plaintiff complains occurred. The report reflects that Plaintiff became agitated during questioning by the nurse and he cursed at her. He was instructed to quit swearing at which time he walked towards Defendant Temple complaining about the nurse's conduct. Defendants Brown and Temple placed Plaintiff back in handcuffs and escorted him back to the segregation unit.  During the escort, Plaintiff yelled at Defendant Temple stating "Man that was wrong and ya'll are not going to fuck with my life." The guard instructed Plaintiff to continue walking to his cell. After the trio arrived inside the segregation unit the officers removed Plaintiff's shackles and began walking to his cell block. Plaintiff once again complained loudly about being treated wrongly and stated he would not take it.  He suddenly stopped walking then turned and tried to head butt Defendant Temple.  Both correctional officers grabbed Plaintiff's shoulders and placed him on the ground. While on the ground Plaintiff continued to swear and struggle. When he quit struggling Defendants Temple and Brown lifted him to his feet and took him to the front of the segregation unit. Captain Napier, having heard the commotion, arrived at the unit and instructed Defendants Temple and Brown to put Plaintiff in the shower area until he calmed down. Two other officers, Lieutenant Loman and Officer Fenn, subsequently escorted Plaintiff to the health care unit for a medical report. Following the medical examination Plaintiff was escorted to the segregation unit where pictures were taken, and he was instructed to write a statement. Voicing a fear for his safety and retaliation from Defendant Temple, Plaintiff was relocated

to another segregation cell where he would not have direct contact with the guard. Lt. Loman questioned three inmates who possibly witnessed the incident. One inmate stated he had seen nothing and did not want to testify. A second inmate stated he heard Plaintiff talking loudly then observed Defendants Temple and Brown take him to the floor and hit him. A third inmate stated one of the officers kicked Plaintiff in the face and chest while the other one dragged him down the floor on his back. Lt. Loman then questioned Officer Clayton Mitchell about the incident as he had direct view of E-Block-the area where the incident took place-from his post assignment as the North Control Officer. Officer Mitchell indicated Plaintiff was very agitated and vocal during his escort back to his cell. He saw Plaintiff suddenly pull away from Defendant Temple and was taken to the ground. *Doc. No. 23, Exh. A* at 1-2.

Plaintiff's medical report reflects that medical personnel observed no signs of trauma upon examination. Assessment of Plaintiff's condition reflects that he was alert, oriented, and breathing with ease, and no redness or swelling was noted.[3] The nurse commented that "Inmate appears to be upset about going to seg." *Exh. 23, Exh. A* at 4.

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth

---

[3]Defendants' evidentiary submissions include photocopied images of Plaintiff following the incident with Defendant Temples and Brown. The court, however, is unable to discern any evidentiary value from these images because of the their poor quality. *See Doc. No. 23, Exh. A* at 4.

Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). Regarding the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* However, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 4. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

In his opposition, Plaintiff maintains that, while being escorted back to the segregation unit, he informed Defendant Temple in an "even tone of voice" why he did not wish to continue his medical appointment with the nurse who had been questioning him about matters regarding his chronic thyroid condition. After arriving at the segregation unit, Defendant Temple advised Lt. Loman that Plaintiff had been verbally abusive towards the nurse. Plaintiff quickly denied Defendant Temple's portrayal of events at the medical unit and informed Lt. Loman that the nurse had become angry with him when he questioned her about documenting things in his medical record which were inaccurate. Lt. Loman directed Defendants Temple and Brown to escort Plaintiff to his cell. On the way, Defendant Temple and Plaintiff "had words about [Plaintiff] refusing medical treatment and what [Defendant

Temple] said to [Lt.] Loman." Plaintiff maintains Defendant Temple became angry over their verbal disagreement and assaulted him by choking, punching, and hitting him.  He disputes Defendant Temple's claim  he turned and attempted to head butt the officer explaining that because he was in the "escort position," meaning Defendants Temple and Brown were on either side of him and holding his arms, it was impossible for him to stop abruptly, turn towards the guard and attempt to head butt him. Rather, Plaintiff maintains Defendant Temple subjected him to an unjustified assault while he was helpless and in full restraints and that Defendant Brown, instead of trying to protect him, assisted in the assault by holding him down.[4]  *Doc. No. 35*.

Defendant Temple meanwhile claims his use of force against Plaintiff was justified after the inmate made an aggressive move towards him. Under the circumstances, this Defendant contends he used only the minimal force necessary to restore control.  *Doc. No. 23, Exh. C*. Defendants argue that Plaintiff may not prevail on his excessive force claim because he suffered no injuries  from the incident. *Doc. No. 23*.

Plaintiff's medical records fail to reflect that he sustained any significant injuries because of the September 13, 2011, incident.  Although the "extent of the injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary in a particular situation,'" *Hudson*, 503 U.S. at 7  (quoting *Whitley*, 475 U .S. at 321), lack of a permanent or "significant" injury is not dispositive. *Wilkins*, 559 U.S.

---

[4]As noted, Defendants' evidence indicates Plaintiff's leg restraints were removed after he entered the segregation unit. *Doc. No. 23, Exhs. A (Incident Report), B, C.*

at 34, 36-37 (dismissal of "a prisoner's excessive force claim based entirely on [a] determination that his injuries were '*de minimis*' [is improper] . . . [as it] is at odds with *Hudson*'s direction to decide excessive force claims based on the nature of the force rather than the extent of the injury"). There is a conceptual distinction between a *de minimis* injury and a *de minimis* use of force-there is no "de minimis" level of injury that is an acceptable result of excessive force under the Eighth Amendment. *Id*. at 38-40. If force is applied maliciously and sadistically, liability is not avoided "merely because [Plaintiff] has the good fortune to escape without serious injury." *Id*. at 38. Ultimately, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id*.; *Hall v. Bennett*, 447 F. App'x 921, 923-24 (11th Cir. 2011) (unpublished) (citing *Wilkins*, 559 U.S. at 38) ("[W]hile [plaintiff's] medical reports did not note any obvious injuries, we are mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury."). The nature of the injuries suffered by Plaintiff will, however, remain relevant to whether Defendant Temple actually used force as described by Plaintiff and whether he acted "maliciously and sadistically."[5] *Wilkins*, 559 U.S. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a

---

[5]The *Wilkins* Court noted that "the relatively modest nature of [a plaintiff's] alleged injuries" is likely to limit the damages recoverable. *Id*. 559 U.S. at 40.

variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, [503 U.S.] at 7-8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S. Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-01.

Here, Plaintiff maintains that, with no justification or provocation, Defendant Temple subjected him to excessive force. He asserts that Defendant Temple attacked him maliciously and sadistically for no reason other than to cause him harm and Defendant Brown held him down while he was being assaulted. *Doc. No. 35*. Plaintiff acknowledges that he expressed his displeasure over the nurse's conduct while being escorted back to his cell but insists he did nothing to warrant any use of force. *Id*. He emphasizes that he was restrained and not posing a threat when Defendant Temple attacked him from behind. *Id*. Statements from inmate witnesses who observed the incident corroborate these assertions. *Doc. No. 23, Exh. A* at 7-9.

As explained, Defendants have denied Plaintiff's allegations regarding the use of force and maintain at no time during the incident in question was more force used then necessary to subdue and gain control of Plaintiff who had made an aggressive move towards Defendant Temple. They maintain that Plaintiff's description of the assault with no

16

allegation or evidence of injury fails to establish the objective component of an excessive force claim. This argument improperly focuses on the extent of the injury rather than the extent and propriety of the force applied. Furthermore, in the posture of a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Because the absence of serious injury does not necessarily establish that Defendant Temple tempered the severity of his force as a theoretical matter, the apparent lack of injury cannot be used to support an inference that Defendant Temple applied only the minimal force necessary to gain control of Plaintiff. A ruling otherwise would undermine the Supreme Court's holding in *Wilkins*, which contemplated the possibility of a successful excessive force claim despite the lack of a serious injury. 559 U.S. at 37-38.

Given the parties' "two competing, contradictory stories of what happened," this court cannot "improperly weigh[ ] the witnesses' credibility by favoring [Defendants'] account over [Plaintiff's]." *Hall*, 447 F. App'x at 924. Viewing the facts in the light most favorable to Plaintiff, as the court must at this stage in the proceedings, the court concludes Defendant Temple is  not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive Defendant Temple's motion for summary judgment regarding the excessive force claim lodged against him. *Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the use of force and whether Defendant Temple acted

17

"maliciously and sadistically" to cause harm.  Consequently, the motion for summary judgment regarding the excessive force claim presented against this Defendant in his individual capacity is due to be denied.

*F.  The Failure to Protect Claim*

Plaintiff maintains that Defendant Brown failed to protect him from the assault by Defendant Temple. Defendant Brown, Plaintiff asserts, held him down on the floor as Defendant Temple choked, hit, and punched him. *Doc. Nos. 1, 17.*

Defendant Brown argues he is protected by qualified immunity.  As noted, however, a defense of qualified immunity is generally unavailable in cases involving excessive force because "the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution." *Skrtich*, 280 F.3d at 1301.  A defendant is not entitled to qualified immunity when a plaintiff properly pleads excessive force resulting from a failure to protect by the defendants.  As discussed, *infra*, Plaintiff has properly pled his claim for relief.  Thus, the only question is whether he has alleged facts sufficient to survive a motion for summary judgment.  *Id.*  Accordingly, this court will consider the sufficiency of Plaintiff's allegations that Defendant Brown  failed to protect him from the use of excessive physical force.

Jail officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to

take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, [] and the official does not respond[] reasonably to the risk'" *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc)*, abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting *Farmer*, 511 U.S. at 844). Thus, in order to survive summary judgment on this claim, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S. Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324-25, 115 L. Ed. 2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Plaintiff maintains Defendant Brown acted with deliberate indifference by failing to protect him from Defendant Temple's use of excessive physical force in the segregation unit. Defendant Brown denies that Plaintiff was hit, choked, or punched at any time during the September 13, 2011, incident. *Doc. No. 23, Exh. B*.

Based on the previous discussion regarding Defendant Temple's alleged use of

19

excessive physical force on Plaintiff at the segregation unit, the facts, when viewed in the light most favorable to Plaintiff, establish that Defendant Brown, however, had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that this defendant actually drew this inference, and thereafter, ignored this risk. The allegations in Plaintiff's complaint, taken by the court as true at this juncture, indicate that Defendant Brown was present during Defendant Temple's assault on Plaintiff and watched and held Plaintiff to the floor without intervening. The court, therefore, concludes that Defendant Brown is not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive a motion for summary judgment. Consequently, the motion for summary judgment relative to the alleged deliberate indifference to Plaintiff's safety by Defendant Brown is due to be denied.

*G. The Due Process Claim*

Following the September 13, 2011, altercation Officer Temple charged Plaintiff with violating Rule Number 29-Assault on ADOC. Defendant Ellington presided over the disciplinary hearing on September 19, 2011. Plaintiff complains that Defendant Ellington violated his due process rights because she changed and/or altered the testimony of his three witnesses. *Doc. No. 1*. Although Plaintiff and his three inmate witnesses gave detailed testimony against Defendant Temple, Plaintiff alleges that Defendant Ellington changed the substance of their testimony on the disciplinary report to match the testimony of Defendant Temple in order to protect both him and Defendant Brown from having their conduct

exposed. *Doc. No. 35* at 15-16.

Defendant Ellington found Plaintiff guilty of the disciplinary infraction and sanctioned him to loss of canteen, visiting, and telephone privileges for sixty days, confinement to disciplinary segregation for 45 days, four months loss of good time, and a referral to classification for a custody increase. The sanctions were directed to run concurrent with any already imposed. *Doc. No. 23, Exh. F.* Because Plaintiff lost good time as a result of being found guilty on the disciplinary infraction for his violation of Rule Number 29, his challenge to the validity of the disciplinary proceedings provides no basis for relief at this time. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997)*; Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

In *Heck*, the Supreme Court held that claims for damages arising from challenges to the legality of a prisoner's confinement are not cognizable in a 42 U.S.C. § 1983 action "unless and until the [order requiring such confinement] is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus" and complaints containing such claims must, therefore, be dismissed. 512 U.S. at 489. The Court emphasized that "habeas corpus is the exclusive remedy for a [confined individual] who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983" and, based on the foregoing, concluded that Heck's complaint was due to be dismissed as no cause of action existed under section 1983. *Id*. at 481.

In *Balisok*, the Supreme Court applied *Heck* in the circumstances of a § 1983 action claiming damages and equitable relief for a procedural defect in a prison's administrative process where the disciplinary action taken against the plaintiff included, among other things, deprivation of 30 days good-time credit. 520 U.S. at 644-46. The Court held that a state prisoner's claim for damages is not cognizable under § 1983 if a judgment in favor of the plaintiff would necessarily be at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence, unless the prisoner can demonstrate that the conviction or sentence has been previously invalidated. *Id*. at 648. Absent such an invalidation, the § 1983 suit must be dismissed. *Id*. at 649.

Plaintiff has not shown that the disciplinary decision he challenges has been invalidated in an appropriate civil action. Consequently, the instant collateral attack on this adverse action is prohibited by *Heck* and *Balisok*. Based on the foregoing, the court concludes that Plaintiff presently has no cause of action under § 1983 with respect to a claim challenging the September 19, 2011, disciplinary proceedings. This claim, therefore, is due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

## H.  The Failure to Investigate Claim

Plaintiff complains that Defendants Napier and Loman failed to investigate properly his complaints regarding Defendants Temple's and Brown's actions on September 13, 2011, in violation of his due process rights. The failure by Defendants Loman and Napier to carry out a proper and unbiased investigation, Plaintiff claims, resulted from their desire to protect

Defendants Temple and Brown based on their inappropriate conduct while obfuscating their duty to "seek[] out the truth" regarding the incident. *Doc. Nos. 1, 35.*

"By its terms . . . [§ 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *See Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Here, Plaintiff's claim that Defendants Napier and Loman violated his due process rights by failing to conduct a proper investigation into the September 13, 2011, incident fails to implicate any constitutional right to which he is entitled. The failure to properly investigate an inmate's complaint does not rise to the level of a separate constitutional violation. Inmates simply do not enjoy a constitutional right to an investigation of any kind by government officials. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.").    Based on the foregoing, the court concludes that the conduct about which Plaintiff complains with respect to Defendants Napier and Loman does not rise to the level of a constitutional violation and, therefore,  provides no basis for relief in this 42 U.S.C. § 1983 action.  Defendants are, therefore, entitled to summary judgment on this claim.

## III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Plaintiff's request for preliminary and permanent injunctive relief (*Doc. No. 17*)

be DISMISSED as moot;

2.    Plaintiff's request that criminal charges be filed against Defendant Temple be DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(i);

3.    Plaintiff's challenge to the September 19, 2011, disciplinary proceedings be DISMISSED without prejudice in accordance with the directives of 28 U.S.C. § 1915(e)(2)(B)(ii);

4.    Defendants' motion for summary judgment (*Doc. No. 23*) with respect to Plaintiff's claim for monetary damages lodged against them in their official capacities be GRANTED as Defendants are entitled to absolute immunity from these claims;

5.    The motion for summary judgment filed on behalf of Defendants Ellington, Loman, and Napier (*Doc. No. 23*) be GRANTED;

6.    The motion for summary judgment filed on behalf of Defendant Temple (*Doc. No. 23*) regarding Plaintiff's September 13, 2011, excessive force claim lodged against this defendant in all aspects of his individual capacity be DENIED;

7.    The motion for summary judgment filed on behalf of Defendant Brown (*Doc. No. 23*) regarding Plaintiff's claim that this defendant failed to protect him from Officer Temple's use of excessive force on September 13, 2011,  be DENIED in all aspects of his individual capacity;

8.    This case be set for a set for an evidentiary hearing on Plaintiff's excessive force claim against Defendant Temple and his failure to protect claim against Defendant Brown.

9.     This case be referred back to the Magistrate Judge for additional proceedings. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **November 18, 2014**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 4th day of November, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE